**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

DENISE BAER and KENNETH BAER,    )
                                 )
Plaintiffs,                      )        **CIVIL ACTION**
                                 )
v.                               )        **NO. 16-40052-TSH**
                                 )
MONTACHUSETT REGIONAL            )
TECHNICAL SCHOOL DISTRICT,       )
                                 )
Defendant.                       )
_____ )

## ORDER AND MEMORANDUM ON DEFENDANT' MOTIONS FOR SUMMARY JUDGMENT (Docket Nos. 42 & 44)

### May 17, 2019

Kenneth and Denise Baer ("Plaintiffs") are husband and wife. They were terminated from their employment at Montachusett Regional Technical School District ("Monty Tech") and assert several claims against Monty Tech arising from that termination. Mrs. Baer alleges unlawful discrimination based on gender pursuant to Title VII (Count I) and Mass. Gen. Laws ch. 151B (Count III), retaliation for engaging in protected conduct in violation of Title VII (Count II) and Mass. Gen. Laws ch. 151B (Count IV), and defamation (Count V). Mr. Baer alleges unlawful discrimination based on association in violation of Title VII (Count VII) and Chapter 151B (Count IX), unlawful retaliation in violation of Title VII (VIII) and Chapter 151B (Count X), and defamation (Count XI).[1] Monty Tech has moved for summary judgement on all claims. (Docket Nos. 42, 44). For the reasons stated below, Monty Tech's motion for summary judgment for Mr.

---

[1] Plaintiffs have consented to dismissal of their claims for negligent infliction of emotional distress (Counts VI and XII).

Baer's claims (Docket No. 42) is ***granted*** and with respect to Mrs. Baer's claims (Docket No. 44) is ***granted*** in part and ***denied*** in part.

<u>**Background**</u>

Monty Tech is a vocational high school in Fitchburg, Massachusetts.  Before their termination, Plaintiffs worked at the school.  Mrs. Baer was an instructor in the Cosmetology Department and was a member of the teacher's union.  Mr. Baer served as Coordinator of Cooperative Education and Placement and was employed on a year-to-year basis.

*1.  Mrs. Baer*

*a.  Sexual Harassment Claim*

At the time the Baer's employment was terminated, Mrs. Baer had a sexual harassment claim pending against Monty Tech before the MCAD.  She alleged that in 2008, she was sexually harassed by the superintendent of the school, James Culkeen.  After rejecting Mr. Culkeen's sexual advances, Mrs. Baer was suspended and demoted.  In 2010, Mr. Culkeen was fired due to inappropriate sexual conduct with other female employees.  In 2013, James Hachey, a friend of Mr. Culkeen, became Mrs. Baer's supervisor.  Mrs. Baer alleged that Mr. Hachey also began harassing and retaliating against her.  Mr. Hachey regularly called Mrs. Baer a "bitch," even in the presence of her students.  When she complained, she was told that her employment was unlikely to continue and that her difficulties with Mr. Hachey were due to her "poor" personality, not her gender.  Plaintiffs argue that these complaints of harassment and retaliation were never investigated.

*b.  Events Leading to Termination*

Anna M. was a cosmetology student at Monty Tech.  On May 6, 2014, Anna, a foster child, was placed into Plaintiffs' home by the Massachusetts Department of Children and Families ("DCF").  In November 2014, Plaintiffs discovered that Anna and her friend stole and used their

credit card.  Shortly thereafter, Plaintiffs discovered that Anna planned to run away.  Plaintiffs reported their concerns to DCF and, on January 22, 2015, DCF removed Anna from Plaintiffs' home.  According to Plaintiffs, Anna had experienced multiple abusive relationships in her past.  One manifestation of this past trauma was her propensity to run away.

After Anna was removed from Plaintiffs' home, DCF placed her with the family of another Monty Tech student and she continued to attend Monty Tech.  In February 2015, Anna's new foster parents contacted the school to raise concerns about Mrs. Baer's treatment of Anna since she was removed from Plaintiffs' home.  On March 10, 2015, Mr. Barrett, Anna's new foster parent, met with Mr. Hachey, Monty Tech's Principal, Thomas Browne, and Monty Tech's social worker, Kathleen Hanson, to further discuss his concerns.

According to Mrs. Baer, after she informed DCF of Anna's intentions to run away, Anna changed her behavior towards Mrs. Baer.  For instance, she would tell her friends to "hold her back" while making threatening gestures towards Mrs. Baer.  Mrs. Baer reported these incidents to Principal Browne, who informed her that the school would not intervene in "personal matters" and that any issues regarding Anna should be addressed with Ms. Hanson.

On March 12, Plaintiffs met with Ms. Hanson.  According to Plaintiffs, "[t]he actual substance of what happened between Ms. Hanson and/or Mr. and Mrs. Baer has been reported by multiple defense witnesses in wildly inconsistent ways.  What is consistently reported, however, is that Ms. Hanson's response to whatever actually happened was, at the very least, unusual." (Docket No. 53, at 2-3).  After the meeting, Ms. Hanson developed an "emergency plan" so that her colleagues could interrupt her and pretend she was needed elsewhere if they observed that she was in a confrontational situation.

On March 17, 2015, Principal Browne met with Mrs. Baer to discuss a dispute she had with her students regarding the dress code.  Principal Browne told Mrs. Baer that he met with Anna's foster parents, who raised concerns that Mrs. Baer was treating Anna unfairly.  Mrs. Baer denied any such treatment.  Principal Browne reiterated his expectation that Anna's past experiences with Plaintiffs would not impact her experience in the classroom.  Ms. Hanson instructed Anna to spend Mrs. Baer's class period in her office.  On March 17, 18, and 19, Anna did not attend Mrs. Baer's class.

On March 19, 2015, Plaintiffs approached Ms. Hanson outside of her office and then followed her into her office.  Mrs. Baer accused Ms. Hanson of using two students to undermine her authority in the classroom.  According to Mrs. Baer, Aryana, Anna's foster sister, started to act disrespectfully toward Mrs. Baer only after meeting with Ms. Hanson.  Ms. Hanson told Mrs. Baer that she did not encourage Aryana to act disrespectfully but to talk to Mrs. Baer about her missing assignments noted on her progress report.

During that confrontation, David Pirri, Monty Tech's adjustment counselor, called Ms. Hanson's office to interrupt the meeting as she had requested.  Mr. Pirri then walked to Ms. Hanson's office, opened the door, and asked her to step outside.  Ms. Hanson began to cry after leaving her office.  Principal Browne was then called out of a meeting and found Ms. Hanson hiding in the corner of the Dean's office away from the window.  The next day, Ms. Hanson provided Principal Brown with a written statement detailing her interactions with Plaintiffs.  According to Mr. Pirri, Ms. Hanson struggled emotionally after the confrontations.

Subsequently, Dr. Sheila Harrity, the school's Superintendent, determined an investigation into Plaintiffs' conduct was necessary.  On March 24, 2015, Plaintiffs were placed on paid administrative leave.  That day, Mrs. Baer obtained a harassment prevention order against Anna,

and on the next day, Plaintiffs filed a criminal complaint against Anna for stealing their credit card the year before.   According to Plaintiffs, they filed the criminal complaint and sought the harassment order to challenge Anna's credibility in Monte Tech's subsequent investigation.

Between March 25 and March 30, 2015, Tammy Crocket, Monty Tech's Business Manager, and Principal Browne conducted several interviews with teachers, administrators, and students regarding Mrs. Baer's alleged misconduct.   According to Plaintiffs, Mrs. Baer provided a list of more than a dozen witnesses that could have corroborated her version of events, none of whom were interviewed.   In addition, Plaintiffs claim that the six students interviewed were all Anna's close friends, whose complaints had "little, if anything, to do with Anna." (Docket No. 50 ¶ 50).

Based upon the interviews with school personnel that concerned the confrontation with Ms. Hanson, Principal Browne found Ms. Hanson's version of events credible and concluded that Plaintiffs were verbally aggressive and intimidating towards Ms. Hanson.   Principal Browne also found that "student testimony during the investigation interviews was consistent and supported the allegation that Mrs. Baer had singled out Anna M. by skipping over her when collecting grades and passing out materials and by refusing to allow Anna M. to participate in freshmen service day." *Id.* ¶ 57.   Further, Principal Browne concluded that student testimony supported the allegation that Mrs. Baer posted quotes in the classroom about lying that were directed at Anna. Superintendent Harrity concluded that Mrs. Baer retaliated against Anna and denied her equal educational opportunities.   In addition, Superintendent Harrity found that Mrs. Baer's conduct included "disrespectful, intimidating, [and] bulling" interactions with Ms. Hanson. *Id.* ¶ 66.   On June 26, 2015, Superintendent Harrity terminated Mrs. Baer's employment.

*2. Mr. Baer*

On March 24, 2015, Superintendent Harrity also placed Mr. Baer on administrative leave. The allegations against Mr. Baer consisted entirely of his alleged inappropriate confrontations with Ms. Hanson.  According to Plaintiffs, Principal Browne previously told Mr. Baer that if a woman at the school accused him of bullying or intimidation, he could be disciplined "based simply on the victim's perception." *Id.* ¶ 66 (quotation marks omitted).  Plaintiffs argue that Principle Browne's prescience foreshadowed the events leading to Mr. Baer's dismissal.

After his investigation, Superintendent Harrity determined that Mr. Baer engaged in inappropriate and unprofessional conduct including harassing and intimidating Ms. Hanson.  On June 30, 2015, Superintendent Harrity terminated Mr. Baer's employment.

## **Standard of Review**

Rule 56 of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment if the moving party shows, based on the materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the nonmoving party. *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id*.

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support

the nonmoving party's case.'" *Rakes v. United States*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005), *aff'd*, 442 F.3d 7 (1st Cir. 2006) (quoting *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (citing *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548). When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002) (citation omitted).

## Discussion

Title VII gender discrimination can come in two forms. *Burns v. Johnson*, 18 F. Supp. 3d 67, 72 (D. Mass. 2014). First, "[i]t can mean that the defendant took a discrete, adverse employment action against the plaintiff because of his or her gender." *Id.* (citing *Johnson v. Univ. of P.R.*, 714 F.3d 48, 53 (1st Cir. 2013)). Second, it "can also mean that the defendant harassed the plaintiff based on . . . her gender and thereby created a gender-based hostile work environment." *Id.* (citing *Johnston*, 714 F.3d at 53). Although not entirely clear, Mrs. Baer seems to assert both forms of gender discrimination. Plaintiff does not identify which type of discrimination claim she alleges in Counts I and III. Because Counts II and IV are clearly retaliatory claims, the Court will assume that Counts I and III are hostile work environment claims.

### 1. Counts I & III

To state a claim for a hostile work environment under Title VII and Mass. Gen. Laws ch. 151B, § 4(16A), a plaintiff must present sufficient evidence to demonstrate that her workplace was "'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . [her] employment and create and abusive working environment.'" *Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 43 (1st Cir. 2011) (first

alteration and omission in original) (quoting *Quiles-Quiles v. Henderson*, 439 F.3d 1, 7 (1st Cir. 2006)).[2]  On the other hand, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment" to show an objectively hostile or abusive workplace environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275 (1998) (quotation marks and citations omitted).

"[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367 (1993); *see also Noviello v. City of Boston*, 398 F.3d 76, 92 (1st Cir. 2005) (noting it is the Court's role "to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment").  "[T]here is no mathematically precise test to determine whether a plaintiff presented sufficient evidence that she was subjected to a severely or pervasively hostile work environment." *Colón-Fontánez*, 660 F.3d at 44 (quotation marks and citations omitted).  The First Circuit, however, has held that to succeed on a hostile work environment claim pursuant to Title VII, a plaintiff must establish:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcomed sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so and (6) that some basis for employer liability has been established.

*Roy v. Correct Care Solutions, LLC*, 914 F.3d 52, 62 (1st Cir. 2019) (quoting *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001).

---

[2] "Chapter 151B is Massachusetts's analog to Title VII's discrimination and retaliation bar.  As neither party has identified meaningful distinctions between Title VII and Chapter 151B that would affect the outcome here, we do not provide separate analysis for the Chapter 151B claims." *Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215 n.9 (1st Cir. 2016) (citations omitted)

While Defendant moves for summary judgement on all counts, it does not advance any arguments in its memoranda why it is entitled to summary judgment on Mrs. Baer's hostile work environment claims.  Therefore, Counts I and III survive this motion.

### 2. *Counts II & IV*

Mrs. Baer claims that her termination was, rather than a result of her treatment of Anna or Ms. Hanson, a retaliatory response for Mrs. Baer's sexual harassment claim against Mr. Culkeen.

Both Title VII and Chapter 151B contain provisions that prohibit employers from retaliating against persons who complain about unlawful discriminatory employment practices. *See* 42 U.S.C. § 2000e-3(a); Mass. Gen. Laws ch. 151B, § 4(4).  "Retaliatory termination claims based on circumstantial evidence are evaluated using the *McDonnell Douglass* burden-shifting framework." *Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014) (citation omitted).[3]   To make a prima facie case, a plaintiff "must show that she engaged in protected conduct, that she suffered an adverse employment action, and that a causal nexus exists between the protected activity and the adverse action." *Ponte*, 741 F.3d at 321 (citation omitted).  "The causation element of a Title VII retaliation claim is not satisfied by evidence that retaliation was one motivating factor in the adverse action." *Roy*, 914 F.3d at 70.  Instead, a plaintiff "must show 'but-for' causation— that is, that she 'should not have [been terminated] in the absence of the' protected complaints." *Id.* (alterations in original) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S.Ct. 2517 (2013)).

If a plaintiff can make a prima facie case, the burden then "shifts to the defendant to produce evidence 'that the adverse employment actions were taken for a legitimate,

---

[3] Again, the Court will apply the same framework to assess Mrs. Baer's claims under state and federal law. *See Xiaoyan Tang*, 821 F.3d at 215 n.9; *see also Knight v. Avon Products, Inc.*, 438 Mass. 413, 420, 780 N.E.2d 1255 (2003) (noting the Supreme Judicial Court's adoption of the *McDonnell Douglass* framework "as an aid to the resolution of claims of employment discrimination under G.L. c. 151B" (citation omitted)).

nondiscriminatory reason.'" *Cham v. Station Operators, Inc.*, 685 F.3d 87, 94 (1st Cir. 2012) (quoting *St. Mary's*, 509 U.S. at 507, 113 S.Ct. 2742).  "If the employer provides a legitimate reason and meets this burden of production, [the plaintiff]—who retains the burden of proof throughout—would have to show that his employer's stated reasons are pretextual and proffered to disguise retaliatory animus." *Alvarado v. Donohoe*, 687 F.3d 453, 458 (1st Cir. 2012) (citation omitted).

Defendant does not dispute that Mrs. Baer was engaged in protected conduct or that she suffered an adverse action.  Instead, Defendant urges the Court to grant summary judgment because Mrs. Baer cannot establish a causal nexus between her complaints and subsequent termination and cannot show that Defendant's neutral reason for firing her—that Mrs. Baer retaliated against Anna and intimidated Ms. Hanson—was pretextual.

A Court will "'bypass the prima facie case issue because it is clear that plaintiff has not mustered enough evidence for a reasonable jury to conclude that [the defendant's] stated reason' for the employment action was pretextual." *Cham*, 685 F.3d at 95-96 (alteration in original) (quoting *Freadman v. Metro. Prop. & Cas. Ins. Co.*, 484 F.3d 91, 100 (1st Cir. 2007); *see also Reeves*, 530 U.S. at 148, 120 S.Ct. 2097 ("[A] plaintiff's prima facie case, *combined with sufficient evidence to find that the employer's asserted justification is false*, may permit the trier of fact to conclude that the employer unlawfully discriminated." (emphasis added)).  To show pretext, Mrs. Baer "must produce evidence to permit a reasonable jury to conclude both that disparate treatment occurred and that the difference in treatment was because of [gender].  The same evidence may support both showings." *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 62 (1st Cir. 1999) (citation omitted).  Pretext "means more than an unusual act; it means something worse than business error; pretext means deceit used to cover one's own tracks." *Ronda-Pérez v. Banco Bilbao Vizcaya*

*Argentaria*, 404 F.3d 42, 45 (1st Cir. 2005) (internal quotation marks omitted).  "When assessing a charge of pretext in an employment discrimination case, the focus is on the mindset of the actual decisionmaker." *Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 67 (1st Cir. 2008) (citations omitted).  Accordingly, "the plaintiff must show that the decisionmaker did not believe in the accuracy of the reason given for the adverse employment action." *Id.*

Mrs. Baer cannot make this showing.  First, Mrs. Baer was terminated for her treatment of Anna and her confrontation with Ms. Hanson.  The investigation included interviews of at least 17 people, in addition to Mr. and Mrs. Baer's interviews.  Superintendent Harrity determined that based upon the evidence garnered from the investigation, there was proper cause to terminate Mrs. Baer's employment.  Mrs. Baer has proffered no evidence that this investigative procedure was irregular in any way.  Further, nothing suggests that Superintendent Harrity did not believe the veracity of the allegations. *See Kouvchinov*, 537 F.3d at 67.  That this Court may feel the decision was severe or even incorrect is inapposite. *See Mulvihill v. Spalding Sports Worldwide, Inc.*, 2002 WL 31828916, at *4 (D. Mass. Oct. 16, 2002) ("That this court might, based on its own investigation, conclude that defendant's action was rather harsh is irrelevant."), *aff'd sub nom.*, *Mulvihill v. Top-Flight Golf Co.*, 335 F.3d 15 (1st Cir. 2003); *Kouvchinov*, 537 F.3d at 67 ("[I]t is not enough for a plaintiff to show that the decisionmaker acted on an incorrect perception."). Finally, similarly situated male teachers have also been terminated.  Since coming to Monty Tech, Superintendent Harrity has terminated or declined to renew at least three male teachers' employment "for performance reasons, and/or unbecoming, inappropriate and/or unprofessional conduct." (Docket No. 50, ¶ 125).  One of these teachers was placed on administrative leave after similar allegations of mistreatment of a student and Superintendent Harrity also assigned Mr. Browne and Ms. Crocket to investigate. *Id.* ¶ 126; *see also Garcia v. Bristol-Myers Squibb Co.*,

535 F.3d 23, 31 (1st Cir. 2008) ("A plaintiff can demonstrate that an employer's stated reasons are pretextual in any number of ways, including by producing evidence that plaintiff was treated differently from similarly situated employees." (quotation marks and citation omitted)).

The Court is "mindful that probing an employer's rationale can be difficult." *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 116 (1st Cir. 2015). Thus, the Court must "exercise 'particular caution' when considering an employer's motion for summary judgement raising issues of 'pretext, motive, and intent.'" *Id.* (quoting *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 34 (1st Cir. 2001)). However, "[e]ven in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 173 (1st Cir. 2003) (citation and quotation marks omitted). Mrs. Baer only argues that the "so-called investigation was one-sided" (Docket No. 53, at 11) and that no one filed a report of abuse or neglect with DCF. In the end, despite Mrs. Baer's efforts, she only "points us to de minimis evidence, insufficient for a rational factfinder to infer" pretextual termination. *Ray*, 799 F.3d at 117. Thus, the Court must grant Defendant summary judgement on Counts II and IV.

### 3.  *Counts VII, VIII, IX, & X*

Mr. Baer alleges that he was discriminated based on and retaliated against because of his association with his wife in violation of Title VII (Counts VII and VIII) and Chapter 151B (Counts IX and X).

"The term 'associational discrimination' refers to a claim that a plaintiff, although not a member of a protected class himself or herself, is the victim of discriminatory animus directed toward a third person who *is* a member of the protected class and with whom the plaintiff associates." *Flagg v. AliMed, Inc.*, 466 Mass. 23, 27, 992 N.E.2d 354 (2013) (emphasis in original).

In *Flagg*, the plaintiff's employer "terminated his employment premised on discriminatory animus directed toward his handicapped wife, that is, its desire to be free from its obligation to pay for the wife's costly medical treatment." *Id.* at 27, 992 N.E.2d 354.  The Supreme Judicial Court held that "associational discrimination based on handicap is prohibited under § 4(16)." *Id.* at 37, 992 N.E.2d 354.  In particular, "[w]hen an employer takes adverse action against its employee because of his spouse's impairment, it is targeting the employee as the direct victim of its animus, inflicting punishment for exactly the same reason and in exactly the same way as if the employee were handicapped himself." *Id.* at 32, 992 N.E.2d 354.

The Supreme Judicial Court has not addressed gender-based associational discrimination. I will assume, *arguendo*, that Massachusetts courts would recognize such a claim for two reasons. First, the SJC's reasoning in *Flagg* can be applied to gender-based associational discrimination. Thus, if Defendant fired Mr. Baer based on discriminatory animus directed towards his wife, he would arguably also be the victim of that animus.

Second, the *Flagg* Court noted the substantial substantive overlay between federal Title VII claims and state claims predicated on Chapter 151B. *Id.* at 33, 992 N.E.2d 354; *see also Wheatley v. American Tel. & Tel. Co.*, 418 Mass. 394, 397, 636 N.E.2d 265 (1994) ("It is our practice to apply Federal case law construing the Federal anti-discrimination statutes in interpreting G.L. c. 151B.").  Federal courts have recognized associational claims based on race. *See, e.g., Tetro v. Elliot Popham Pontiac, Oldsmobile, Buick & GMC Trucks, Inc.*, 173 F.3d 988, 994-95 (6th Cir. 1999) ("A white employee who is discharged because his child is biracial is discriminated against on the basis of his race, even though the root animus for the discrimination is a prejudice against the biracial child.").  "Such conduct falls within Title VII's prohibition of racial discrimination because the difference in race between he Title VII plaintiff and the third

persons is the motivation for the discrimination." *Gallo v. W.B. Mason Co., Inc.*, 2010 WL 4721064, at *1 (D. Mass. Nov. 15, 2010). Thus, in cases of associational discrimination, the plaintiff is discriminated against because of his or her *own* race. *See Parr v. Woodmen of the World Life Ins. Co.*, 791 F.2d 888, 892 (11th Cir. 1986) ("Where a plaintiff claims discrimination based upon an interracial marriage or association, he alleges, by definition, that he has been discriminated against because of *his* race."); *Holcomb v. Iona College*, 521 F.3d 130, 139 (2d Cir. 2008) ("[W]here an employee is subjected to adverse action because an employer disapproves of interracial association, the employee suffers discrimination because of the employee's *own* race."). The same reasoning has been extended to sexual orientation discrimination. *See, e.g.*, *Zarda v. Altitute Express, Inc.*, 883 F.3d 100, 119 (2d Cir. 2018) ("In the context of sexual orientation, a woman who is subjected to an adverse employment action because she is attracted to women would have been treated differently if she had been a man who was attracted to women. We can therefore conclude that sexual orientation is a function of sex and, by extension, sexual orientation discrimination is a subset of sex discrimination.").[4]

Accordingly, like the court in *Gallo*, I will assume that Title VII prohibits gender-based associational discrimination, but to prevail a plaintiff must demonstrate that he was fired "because he was a male associating with females." *Gallo*, 2010 WL 4721064, at *1. Further, because Title VII caselaw informs Chapter 151B's scope, I will also assume that even if *Flagg* opens the door

---

[4] Some court have also recognized advocacy-based claims where the plaintiff is not discriminated on the basis of his or her own characteristics. *See, e.g.*, *Winston v. Lear-Siegler, Inc.*, 558 F.2d 1266, 1270 (6th Cir. 1977) (holding that a plaintiff had standing to sue under Title VII because although he "was not fired because of his race, it was a racial situation in which he became involved that resulted in his discharge from his employment"); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 576 (6th Cir. 2009) (holding that a plaintiff stated a viable Title VII claim by alleging he was discriminated against, not on the basis of his own race, but for advocating affirmative action policies meant to benefit female and minority employees). Here, however, Mr. Baer alleges that he was fired based on his association with, not his advocacy for, his wife.

to state law gender-based associational claims, a plaintiff must make a similar showing before walking through it.[5]

In *Gallo*, this Court ultimately dismissed the plaintiff's claim because "[t]he complaint alleges, expressly and repeatedly, that Gallo was fired because he protested discrimination against female employees, not because he was a male associating with females.  There is no allegation that he was discriminated against on the basis of *his* gender." 2010 WL 4721064, at *1 (emphasis in original).  Mr. Baer claims "that he was fired so that the employer could avoid potential liability because of [his wife's] harassment claim." (Docket No 52, at 14).  Mr. Baer argues that had he not been fired, he would have testified in favor of his wife regarding her sexual harassment and that allowing the Defendant to fire him would create a loophole permitting an employer "to simply identify potential witnesses to harassment claims and terminate them before the get the chance to engage in a protected activity." *Id.*   In the end, however, his claims must because there is no allegation that he was discriminated or retaliated against on the basis of his gender.

### 4.  Counts V & XI

Both Mr. and Mrs. Baer assert defamation claims against Monty Tech.  Monty Tech is a "public employer" within the meaning of the Massachusetts Tort Claims Act ("MTCA"). *See* Mass. Gen. Laws ch. 258, § 1.  Consequently, the MTCA is Plaintiffs' exclusive remedy for tort claims against Monty Tech. Mass. Gen. Laws ch. 258, § 2.

---

[5] It is also worth noting that now-Chief Justice Gants, in a concurrence joined by Justice Cordy, stressed the limited scope of the *Flagg* holding. *See Flagg*, 466 Mass. at 42, 992 N.E.2d 354 (Gants, J., concurring) ("The court's finding of a cognizable claim here is based solely on the allegation the he was fired because the employer feared the medical expenses his spouse was likely to incur because of her handicap . . . .").  Here, it is not as obvious that firing Mr. Baer would mitigate expenses associated with his wife's protected status.  Thus, the factual discrepancies between this case and *Flagg* further support requiring Mr. Baer to show he was discriminated against on the basis of his gender to state a viable claim.

Pursuant to the MTCA, a public employer retains immunity for "any claim arising out of an intentional tort, including . . . libel, slander." Mass. Gen. Laws ch. 258, § 10(c).  Accordingly, Plaintiffs' defamation claims are barred by the MTCA. *See Barrows v. Wareham Fire Dist.*, 82 Mass. App. Ct. 623, 976 N.E.2d 830 (2012) (holding that public employer retained immunity for employee's defamation claim because "the Legislature has determined that both species of defamation, libel and slander, are intentional torts for the purposes of § 10(c)").

<u>Conclusion</u>

For the reasons stated above, Monty Tech's motion for summary judgment on Mr. Baer's claims (Docket No. 42) is ***granted***.  Further, its motion for summary judgment on Mrs. Baer's claims (Docket No. 44) is ***granted*** in part and ***denied*** in part.  Accordingly, Monty Tech is entitled to summary judgment on all claims except Counts I and III.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**